UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA POSTELL,

                            Plaintiff,

                                                    <u>DECISION AND ORDER</u>

                                                    11-CV-6550L

             v.

ROCHESTER CITY SCHOOL DISTRICT,
PRINCIPAL RICHARD SMITH, Individually,
SUPERINTENDENT JEAN-CLAUDE BRIZARD,
Individually,

                            Defendants.
_____

Plaintiff Barbara Postell ("Postell"), a former employee of the Rochester City School District (the "District"), brings this action against the District, Superintendent Jean-Claude Brizard, and Richard Smith, former Principal of John Marshall High School, alleging that the defendants subjected her to discrimination and retaliation in violation of her constitutional right to equal protection, pursuant to 42 U.S.C. §§ 1981, and that the District maintained a pattern or practice whereby her constitutional rights were violated.

Discovery is now complete, and the defendants have moved for summary judgment dismissing Postell's claims. (Dkt. #18). For the reasons that follow, that motion is granted in part, and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

The undisputed facts are these. Plaintiff is an African-American woman who was employed by the District from 1974 until her retirement in July 2010. Originally hired as an English teacher, she began working as a school counselor in 1984, and by 1999, was serving as a school counselor for John Marshall High School .

In the beginning of the 2008-2009 school year, Richard Smith[1] became the principal of John Marshall High School. At that time, there were five counselors working at John Marshall High School, of which plaintiff was the only African-American. Shortly after he arrived, Smith relocated a number of administrators and counselors within the building to different offices, ostensibly to place them closer to the students they served. Plaintiff was moved from her private office in the Counselors' Suite to a different office space, Room 242, a former special education classroom to which an interior partition had been added, dividing it into three spaces. Plaintiff was required to share Room 242 with John Marshall High School Assistant Principal Jason Muhammad ("Muhammad"), and his administrative assistant, Gail Mitchell. It appears undisputed that plaintiff, Muhammad, and Mitchell were the only three African-American administrative staff members in the entire building.

After her relocation to Room 242, plaintiff found that the office space was crowded and insufficiently outfitted, having no working telephones or computers, and no conference space suitable for conducting meetings with students. It took three months, and an express demand by

---

[1] Richard Smith is a defendant in another case in this District, *Tolbert v. Smith, et al.,* 09-CV-6579, in which a different plaintiff alleged discrimination and a hostile work environment at John Marshall High School in Rochester, New York. Although the District Court granted summary judgment in favor of Smith and the School District, the Second Circuit reversed, in part, finding that there were genuine issues of material facts as to the discrimination claims. 790 F.3d 427 (2015).

Muhammad, for telephones and computers to be installed in Room 242.  In contrast, the other [Caucasian] school counselors allegedly retained, or were moved into, their own individual offices for 2008-2009, with working phones, computers, and separate conference spaces.

On July 22, 2009, plaintiff and the other counselors were provided with a memorandum informing them that John Marshall High was redesigning and realigning student/teacher clusters and reassigning caseloads to counselors.  Plaintiff was reassigned from the position she had occupied for some seventeen years counseling high school students (grades 10-12), to a position working solely with middle school students (grades 7-9), an act which plaintiff characterizes as a demotion, as working with high school students is more prestigious, complex and significant than working with middle-schoolers.  The other Caucasian school counselors were permitted to keep their high school assignments, and a Caucasian middle school counselor, Sally Altobello, was given plaintiff's former caseload of high schoolers.  The memorandum also informed counselors that due to the fact that the "House" assignments related to particular rooms and areas of the building, counselor offices might again be moved in order to place counselors near the students to whom they were assigned.

Shortly thereafter, plaintiff was notified that for the 2009-2010 school year she would be reassigned to an office space on the second floor, Room 249.  Room 249 was a windowless former storage room beneath the auditorium balcony that had previously been used during the 2008-2009 school year by Caucasian school social worker Jerry Cheplowitz, and before that, prior to Smith's arrival at John Marshall High, by Persha Carlston, a Caucasian school counselor. Room 209, the hallway office formerly occupied by Sally Altobello (the counselor whose

caseload had been traded with plaintiff's), which was located closer than Room 249 to her former (and plaintiff's new) caseload of students, was apparently left vacant.

Plaintiff requested a meeting with Smith and Assistant Principal Laurel Avery-DeToy, to discuss her concerns about her new office location and change in caseload. The meeting took place August 19, 2009. Plaintiff asked why her caseload had been reassigned. Although it appears undisputed that that time, plaintiff was the most senior and experienced high school counselor at Marshall High, and that her caseloads had boasted the largest number of students graduating with Regents diplomas, Smith stated that he felt that Altobello could serve plaintiff's caseload of high school students better than plaintiff had, and accused plaintiff of being "quite defiant when we ask you for things." Plaintiff also expressed concerns over her new office – specifically, with the fact that it had no space in which to do small group counseling – and observed that, "I, the only black counselor, am [being placed] in a storage area." Plaintiff stated that she felt that the changes to her office and/or caseload were racially discriminatory, and pointed out that Smith had assigned all three of the undesirable storage rooms under the balcony (Room 249 and two similar rooms) to people of color; plaintiff, African-American City police officer Weeks, and Hispanic employee Cynthia Bermudez. For reasons not explained in the record, Smith later reassigned Bermudez to a different office, so that the room beneath the balcony to which she had originally been assigned could be used to store computers, but he declined to reassign plaintiff. Avery-DeToy wrote a letter to plaintiff after the meeting, accusing her of having acted "hostile," but neither Smith nor Avery-DeToy investigated plaintiff's claim of discrimination, or otherwise took any purposeful action in response to it.

In September 2009, shortly after the school year began, plaintiff complained to Smith that she was experiencing health problems, including headaches, eye problems and respiratory difficulties, as the result of her assignment to Room 249. Smith again declined to reassign plaintiff to a different office.

In or around August 2009, plaintiff had filed a complaint about the conditions in Room 249 with the OSHA/PESH Division of the New York State Department of Labor. On September 8 and 11, 2009, plaintiff filed two union grievances contending that she had been subjected to discrimination in the form of unfavorable teaching assignments, unfavorable teaching facilities, and the withholding of her salary (plaintiff claimed she should have been compensated for certain "summer workdays" and was not), and explaining that her office assignment was causing her health problems which were interfering with her ability to do her job. The grievances were initially denied, and because plaintiff retired before a Level II hearing could be scheduled, she opted to drop the matter.

On September 9, 2009, an OSHA inspector, accompanied by the District's Coordinator of Safety, Susan Wheatcraft, inspected Room 249. On November 10, 2009, OSHA issued a Notice of Violation and Order to Comply, identifying three "serious" violations, including a ceiling beam located directly above the counselor's desk that was not sufficiently high off of the floor, a fluorescent light fixture with an exposed bulb, and an electrical switch which lacked a faceplate. However, although plaintiff's primary complaints about Room 249 involved the lack of ventilation and temperature control, OSHA did not test air quality or the temperature on the room. Plaintiff thereafter provided Smith and Superintendent Jean-Claude Brizard with copies

of the OSHA Notice of Violation/Order to Comply, and repeatedly e-mailed Smith requesting that her office be relocated in view of the OSHA report.

In December 2009, Smith offered plaintiff a position at the Student Support Center, which would be located in a different office.  Plaintiff declined the offer, she alleges, because the position would place her in the basement, without an office and without a definite caseload of students, and performing tasks not commensurate with her experience and training.

On December 2, 2009, plaintiff filed a charge of race-based discrimination with the EEOC.  In January 2010, upon orders from Brizard, Smith changed plaintiff's office to Room 209 (the office formerly occupied by Sally Altobello when she was serving the caseload of middle schoolers to which plaintiff was now assigned), which plaintiff found acceptable.

Plaintiff retired in July 2010 after 38 years of service; credited as 41 years, due to a retirement incentive.  She alleges that her retirement was precipitated solely by the difficulties of working under defendant Smith.

In her complaint, plaintiff alleges the following claims: (1) race-based discrimination in violation of Section 1981 against the District, Superintendent Brizard and Smith in their official capacities (collectively, the "District"), based on her caseload/office reassignments; (2) retaliation for complaining about race-based discrimination under Section 1981, against the District; and (3) race-based discrimination in violation of the Equal Protection clause, under Section 1983 and *Monell v. Dep't of Social Servs.*.  In her supplemental submissions opposing summary judgment, plaintiff expands her arguments to allege a hostile work environment claim against Smith, in his individual capacity.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989). Direct evidence of an employer's discriminatory intent is rarely available, and plaintiffs in discrimination suits must often rely instead upon the cumulative weight of circumstantial evidence. *See, e.g., Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). *See also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) ("[A]n employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file"). Nonetheless, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

## II. Plaintiff's Section 1981 Discrimination Claim

In order to establish a *prima facie* claim of discrimination under Section 1981, plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for, and/or satisfactorily performing, the position she held; (3) she suffered and adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *St. Mary's Honor Ctr. v. Hick*, 509 U.S. 502, 506 (1993).

The standards for imposition of municipal liability under Section 1983 apply with equal force to claims brought against municipalities under Section 1981. *See Daughtry v. City of New York*, 2015 U.S. Dist. LEXIS 68627 at *23 (E.D.N.Y. 2015) ("Case law suggests that courts resolve §§ 1981 and 1983 claims under the same substantive standards, although they might frame the analysis differently") (collecting cases); *Carmody v. Village of Rockville Ctr.*, 661 F. Supp. 2d 299, 330 (E.D.N.Y. 2009) (claims of discrimination and retaliation under Section 1981 employ "the same standard for prevailing on a claim of municipal liability under Section 1983, also known as a *Monell* claim"). Thus, where, as here, the defendant is a municipality and/or an individual sued in his official capacity, the plaintiff must also show that the challenged acts were performed pursuant to a policy, custom or practice of the municipality. *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). A policy, custom or practice need not be an express rule or regulation: "[i]f the decision to adopt [a] particular course of action is properly made by [a] government's authorized decision makers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S 469, 481 (1986).

Plaintiff alleges that her assignments to Room 242 (what amounted to a racially segregated office, lacking the computers, telephones and conference space necessary for plaintiff to perform her job) and Room 249 (one of three unventilated interior storage rooms, all of which happened to be assigned exclusively to employees of color for the 2009-2010 school year), combined with the unfavorable change in her student case load from high school students to a less-prestigious caseload of middle school students, constituted an adverse employment action against her.

The District attempts to give plaintiff's allegations short shrift, characterizing them as nothing more than frivolous complaints about the size of her office, and pointing out that plaintiff's job title, salary, hours and other traditional "terms and conditions" of employment remained unchanged. However, the gravamen of plaintiff's claims is that Smith, deliberately and without any conceivable nondiscriminatory motive, traded plaintiff's well-served high school caseload with the less prestigious caseload of a Caucasian middle school counselor, and repeatedly and unnecessarily placed plaintiff in office spaces that were inadequately outfitted or physically uncomfortable to the point of being harmful to her health, in locations which were inconvenient and isolated from other staff members and the students to whom plaintiff was assigned, meanwhile providing similarly-situated Caucasian employees with better treatment and better resources. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (adverse employment actions may include, "[a] less distinguished title, a material loss of benefits, [or] significantly reduced diminished material responsibilities").

The undisputed facts show that plaintiff was removed from counseling high school students, a position she had held for over 15 years, and which she viewed as more prestigious and

9

demanding than work with middle school students. She was told by defendant Smith that another employee could serve the high school students better. This, together with the other negative actions by Smith, certainly appear to constitute an "adverse" employment action. On this record, the Court cannot say that no adverse employment action existed. I believe that a reasonable trier of fact might conclude that Smith's actions toward plaintiff effected so substantial a change in the terms and conditions of her employment as to constitute an adverse employment action. Therefore, at the very least, there is a question of fact as to whether the actions taken were materially adverse. *See generally Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999).

The District also argues that Smith, as a building principal, was not a final policymaker for the District, and that there is no basis to impute liability to the District for his actions. It is true that school principals are not always considered final policymakers for the Districts by which they are employed, but "several cases in this Circuit…have found [school] principals to be final decision makers for purposes of *Monell* liability under certain circumstances…where the harm that befell the plaintiff was under the principal's control [and not] subject to review by another official or entity." *Vasquez v. New York City Dept. of Educ.*, 2015 U.S. Dist. LEXIS 75321 at *31 (S.D.N.Y. 2015) (collecting cases). This appears to have been the case at John Marshall High School.

It is undisputed that Smith was responsible for making office and caseload assignments at John Marshall High School, and the District has not offered evidence to indicate in any way that those decisions were subject to final review or approval by any other person. At the very least, this presents a fact issue for the jury to determine. I believe a reasonable finder of fact could

well conclude that Smith was the final policymaker with regard to the decisions he made relative to plaintiff.

It is undisputed that the District's communications to plaintiff concerning the assignments, and her requests for changes to those assignments, were made between plaintiff and Smith directly. Although plaintiff eventually contacted Brizard about her concerns regarding the impact of her assignment to Room 249 on her health, and Brizard ultimately ordered Smith to move plaintiff to a more acceptable office (which was done), there is no evidence that Brizard or any other administrator was ever involved in making, approving or otherwise finalizing any of Smith's office or caseload assignments. Indeed, on their face, plaintiff's communications to Brizard presuppose that Brizard had no prior knowledge of, or involvement with, her office assignment, and his actions in response appear to have been part of a singular intervention rather than an institutional approval process.

Therefore, at the very least, I find that the record presents material questions of fact with respect to whether Smith was a final decision maker concerning the potentially-adverse actions alleged by the plaintiff, and thus, questions of fact as to whether liability may be imputed to the District for "the harm that befell the plaintiff" as a result. *Vasquez*, 2015 U.S. Dist. LEXIS 75321 at *31 (trial court appropriately denied a motion to set aside a jury's verdict under Fed. R. Civ. Proc. 50 due to lack of evidence establishing municipal liability, where the jury was presented with evidence showing that the defendant school principal's complained-of coach appointments were not required to be approved by any higher authority within the district).

The District's motion for summary judgment dismissing plaintiff's Section 1981 discrimination claim is therefore denied.

**II. Plaintiff's Section 1981 Retaliation Claim**

Plaintiff also alleges that after she complained to Smith that she believed her office assignment to Room 249 was racially discriminatory, pointing out that only staff members of color had been assigned to the undesirable offices in the auditorium, Smith retaliated against her by refusing to move her to another room – essentially forcing her to remain in an office space that he knew was harming her health, even though suitable alternative rooms, including Room 209, the office formerly occupied by Sally Altobello, with whom plaintiff's student case load had been traded, remained available.

A Section 1981 retaliation claim requires proof that: (1) plaintiff engaged in protected activity known to the District; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See generally Carmody*, 661 F. Supp. 2d 299 at 330.

Plaintiff appears to have engaged in protected activity on two occasions – when she complained to Smith that she believed that her assignment to Room 249 was discriminatory, and when she filed her EEOC charge. But, because her EEOC charge occurred after all of the adverse actions of which she complains, clearly plaintiff cannot demonstrate that any retaliatory adverse actions followed it.

To the extent that plaintiff relies on her complaint to Smith as the requisite protected activity, I find, as above, that there are material questions of fact as to whether plaintiff's assignment to an unventilated and potentially unhealthful storage room could be considered an adverse employment action – that is, a material change in the conditions of employment which would

have dissuaded a reasonable employee from complaining about unlawful discrimination. I further find that there are questions of fact concerning whether Smith was a final decision maker with regard to office assignments, in a manner sufficient to establish municipal liability for his actions. Because, on the facts presented, a reasonable finder of fact could conclude that Smith's refusal to move plaintiff to a different location – even when allegedly suitable alternatives existed and when plaintiff had produced medical evidence that her present office assignment was harmful to her health – was an adverse employment action, concerning a matter as to which Smith was the final decision maker, and was motivated by a desire to retaliate against the plaintiff for her complaint of race-based discrimination, the District's motion for summary judgment dismissing plaintiff's retaliation claim is denied.

### III. Plaintiff's Fourteenth Amendment Equal Protection Claim

Plaintiff also alleges, pursuant to Section 1983 and within the framework articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that the District denied plaintiff her Fourteenth Amendment right to equal protection, i.e., the " right to be free from invidious discrimination in statutory and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322 (1980).

Plaintiff's claim that the District violated her right to equal protection is subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kantrowitz v. Uniondale Union Free Sch.*, 822 F. Supp. 2d 196, 215 n.13 (E.D.N.Y. 2011) (collecting cases and noting that "employment discrimination claims brought pursuant to Sections 1981 and 1983 are analyzed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas*"). First, plaintiff must establish a

*prima facie* case of discrimination by demonstrating: (1) she is a member of a protected class; (2) she was performing her position satisfactorily; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp*., 411 U.S. 792; *Petrosino v. Bell Atlantic*, 385 F.3d 210, 226 (2d Cir. 2004).

Once a *prima facie* case has been established, the burden shifts to the District to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a legitimate, nondiscriminatory reason is established, the burden returns to the plaintiff, to demonstrate that the reason put forth by the District is pretextual. *See Mauro v. Southern New England Telecommunications, Inc.*, 208 F.3d 384, 387-388 (2d Cir. 2000). *See generally St. Mary's Honor Center*, 509 U.S. 502, 508 (1993). As with plaintiff's Section 1981 claims against the District, she must also show that "the discriminatory practice was caused by a municipal policy, custom or practice." *Burgis v. New York City Dep't of Sanitation*, 2015 U.S. App. LEXIS 13353 at *15 n.8 (2d Cir. 2015). *See also Zembiec v. County of Monroe*, 766 F. Supp. 2d 484, 492-496 (W.D.N.Y. 2011), *aff'd*, 468 Fed. Appx. 39 (2d Cir. 2012), *citing Monell*, 436 U.S. 658.

With respect to the elements of plaintiff's *prima facie* case, plaintiff has either met each element or presented sufficient evidence to present a material question of fact. It is undisputed that plaintiff is a member of a protected class.

Questions of fact bar resolution of whether plaintiff was performing her position satisfactorily. Plaintiff testified that she was performing her position satisfactorily throughout the relevant time period, pointing out that her caseload of high schoolers consistently had a larger

number of Regents graduates than those of other counselors, and she disputes Smith's testimony that there were performance issues related to student scheduling.

Material questions of fact also exist with regard to circumstances giving rise to an inference of discrimination. A reasonable trier of fact could conclude, based on the undisputed facts that plaintiff was assigned to share an ill-equipped office with the only other African-American administrative staff members at John Marshall High in the first year of Smith's administration, and to a set of undesirable office spaces also assigned solely to minority employees during the second year of Smith's administration, as well as the fact that plaintiff was the only African-American high school counselor and the only counselor whose caseload was taken away from her, that one or more of those actions took place under circumstances giving rise to an inference of discrimination.

Moreover, a reasonable trier of fact could find that Smith's alleged non-discriminatory reasons for those actions – a reconfiguration of offices to place counselors closer to their charges, and plaintiff's allegedly deficient performance, a matter to which Smith testified – are pretextual. For example, plaintiff has produced evidence that her office assignments actually placed her further away from her assigned students even while more closely-situated and desirable offices remained vacant, and plaintiff avers that the performance issues to which Smith testified were mischaracterized.

Moreover, and for the reasons discussed above, I also find that there are material questions of fact with respect to whether the actions taken toward plaintiff rose to the level of an adverse employment action, and whether they were undertaken by an official with final responsibility for, or authority to formulate, District policy with regard to those issues.

The District's motion for summary judgment dismissing plaintiff's equal protection claim is therefore denied.

### IV. Hostile Work Environment Claim (against Smith, individually)

In her papers opposing the defendants' motion for summary judgment, plaintiff also claims that Smith created a hostile work environment in violation of Section 1981.

To establish a hostile work environment, plaintiff must show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), *quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). The standard includes both subjective and objective components. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 297. Moreover, the incidents must be more than episodic or fleeting; "they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id*. In determining whether a work environment approaches the level of a hostile work environment, the finder of face must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id*.

Plaintiff contends that Smith created a hostile work environment, chiefly via her two unfavorable (and possibly unhealthful) office assignments, as well as her caseload reassignment,

which was, in terms of responsibility and prestige, a demotion. Although the physical conditions of plaintiff's office may have been oppressive, and the change in her caseload demeaning, the conduct in which plaintiff contends Smith engaged nonetheless involved no threatening or humiliating verbiage, no comments referencing plaintiff's race, no open ridicule or imposition of discipline, no change in the amount of work plaintiff was required to perform, and no threatening or abusive physical conduct. As such, it was not sufficiently severe or pervasive to approach the level of a hostile work environment. *See e.g., Littlejohn*, 795 F.3d 297 (collecting cases, and holding that allegations including negative statements, harsh or rude treatment, the making of arbitrary demands, increased workload, and exclusion from meetings, are insufficient to create a hostile work environment). To the extent that plaintiff has attempted to establish a claim that she was subjected to discrimination in the form of a hostile work environment, that claim is dismissed.

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (Dkt. #18) is granted in part, and plaintiff's hostile work environment claim is dismissed. The motion is otherwise denied, and the Court finds that material questions of fact preclude dismissal of plaintiff's Section 1981 discrimination and retaliation claims, and her Section 1983 equal protection claim under *Monell*.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 8, 2015.